UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

N⁰ 08-CV-4480 (JFB)
_____

HEWLETT BREWSTER

Petitioner,

VERSUS

THE PEOPLE OF THE STATE OF NEW YORK,

Respondent.

_____

MEMORANDUM AND ORDER
January 21, 2010
_____

JOSEPH F. BIANCO, District Judge:

Hewlett Brewster (hereinafter "petitioner" or "Brewster") petitions this court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his conviction in Suffolk County Court (the "trial court") on two counts of third degree burglary.[1]

Brewster claims his constitutional rights were violated because (1) the trial court improperly instructed the jury regarding circumstantial evidence; (2) he was coerced by the police into giving consent to blood and saliva samples; (3) the evidence was insufficient to convict him; and (4) schizophrenia and an "anti-social disorder" rendered him incapable of consenting to give blood and saliva samples.

For the reasons set forth below, the petition is denied in its entirety on the merits.

---

[1] The State of New York is not properly named as a respondent in this action. Because, according to the docket sheet, petitioner is currently incarcerated at the Clinton Correctional Facility, the correct respondent is the Superintendent of the Clinton Correctional Facility. *See* 28 U.S.C. § 2243. In the interest of judicial efficiency, the Court will construe the petition as naming the Superintendent of the Clinton Correctional Facility as the respondent in light of petitioner's *pro se* status, the fact that respondent has not raised this issue, and the fact that no prejudice to respondent will result.

## I. BACKGROUND

The Court has adduced the following facts from the instant petition and underlying record.

### A. Factual History

#### 1. The Kinemotive Corporation Burglary and Investigation

Kinemotive Corporation is a Farmingdale, New York company that manufactures parts for commercial aircraft, missiles, and rockets. (Tr. 171:9-171:12.) On the morning of October 7, 2000, a Kinemotive vice president, Kenneth Moll, arrived at the Company's office and found two broken windows. (*See id.* 172:4-174:8.) Moll later determined that three computers and one monitor were missing from the office. (*Id.* 175:6-175:18.) The police were called. (*Id.* 176:15-176:19.)

Suffolk County detectives soon arrived and began an investigation. While examining the scene, Detective John McLeer found blood-like stains on eight stones below the broken windows. (*Id.* 177:6-177:12.) McLeer photographed the stones and placed them in a paper bag. (*Id.* 201:11-202:1.) The stones were later sent to the Suffolk County Crime Lab where it was confirmed that the substance on two of the stones was human blood. (*See id.* 210:14-211:9.) Suffolk County Police later obtained a DNA profile of the blood stain from Fairfax Identity Labs, a private laboratory. (*Id.* 291:21-292:5; 292:14-292:23.) This DNA profile was then put into a DNA computer database ("the DNA database"). (*Id.* 293:14-16.)

#### 2. The Marchon Eyewear Burglary and Investigation

On July 13, 2002, an alarm company called Constantino Pontecorvo, a supervisor at Marchon Eyewear, an eye-wear distributor, and told him that a burglary had occurred at Marchon's Melville, New York office. (*Id.* 226:11-227:8.) Pontecorvo went to the office and found that a window had been broken. (*Id.* 227:12-227:15.) He then proceeded inside the office and discovered that a laptop computer was missing. (*Id.* 227:20-227:23; 230:24-231:12.) Suffolk County Police, including Detective Patricia Priestly, responded to the scene. (*Id.* 255:16-255:20.) Priestly went inside the building and observed, among other things, broken glass and a blood-like substance on top of a computer printer. (*Id.* 256:9-256:17.). Douglas Bose, an officer with the Suffolk County Police Crime Scene Unit, also responded and met with Detective Priestly. (*Id.* 268:1-268:6.) Bose took a swab of the substance on top of the printer, sealed it in a bag, and forwarded it to the Suffolk County Crime lab for testing. (*Id.* 269:11-269:18; 271:7-272:25.). Joseph Galdi, a scientist with the Suffolk County Crime Lab, tested the stain from the printer and confirmed that it was human blood. (*Id.* 289:11-290:2.) Helen Lee Wyss, another scientist with the lab, performed a DNA analysis on this blood, and the results of the analysis were entered into the DNA computer database. (*Id.* 291:14-20; 311:1-312:4)

#### 3. Additional DNA Analyses

About a month after the Marchon Eyewear Burglary, on August 11, 2002, Detective Thomas Keteltas of the Nassau County Police obtained a blood sample from petitioner. (*Id.*

281:16-282:8.)² This blood sample was submitted to the Nassau County Medical Examiner for DNA testing. (*Id.* 282:9-15.) It can be inferred from the record that this DNA analysis was also entered into the DNA database. (*See id.* 293:22-294:16.)

In February 2003, Mr. Galdi, the crime lab scientist, became aware that petitioner's DNA matched the DNA recovered from the Kinemotive and Marchon Eyewear scenes. (*Id.*) Subsequently, in December 2003, Dennis Harrington, a Detective Investigator with the Suffolk County District Attorney's Office, took a swab from the inside of petitioner's mouth to collect tissue for an analysis of petitioner's DNA. (*See id.* 302:13-303:21.) The procedure that Investigator Harrington performed is called a "buccal swab." (*See id.*) The swab was sent to the Suffolk County crime lab for analysis. (*Id.* 303:22-303:25.)

At the crime lab, Ms. Wyss, who had previously performed a DNA analysis on the blood recovered from Marchon Eyewear, performed a DNA analysis on the tissue taken from petitioner via the buccal swab. (*Id.* 312:18-313:12.) Additionally, Ms. Wyss also performed her own DNA analysis of the blood recovered from the Kinemotive burglary. (*Id.* 312:5-17.) As noted above, an outside lab had previously performed a DNA analysis on a portion of this blood. Ms. Wyss then compared the DNA on the buccal swab from petitioner, the DNA from the Kinemotive scene, and the DNA from the Marchon Eyewear scene. (*See id.* 313:25-314:9.) She concluded that petitioner's DNA matched the DNA from the Kinemotive and Marchon Eyewear scenes. (*Id.* 321:5-10.)

B. Procedural History

1. State Court Trial

On April 14, 2003, petitioner was indicted on two counts of Burglary in the Third Degree pursuant to New York Penal Law § 140.20. Trial began on November 22, 2004. (*See generally* Tr:1:1-150:6.) The prosecution presented evidence from Kenneth Moll regarding what he saw when he arrived at Kinemotive Corporation on October 7, 2000 and from Detective McLeer and a forensic scientist from the Suffolk County Crime Lab regarding the evidence recovered from the scene. Constantino Pontecorvo testified regarding what he saw at Marchon Eyewear on July 13, 2002, and another Marchon employee testified about the missing laptop. Detective Priestly, Officer Bose, and Mr. Galdi testified about the physical evidence recovered from Marchon. Additionally, Detective Keteltas and Investigator Harrington testified regarding the samples taken from petitioner that were used in the DNA analyses. Mr. Galdi also testified about initially learning that petitioner's DNA matched the DNA from the burglaries. Ms. Wyss testified regarding her DNA analyses and her conclusion about those analyses.

Petitioner testified in his own defense. (*Id.* 334:7-337:25.) He claimed he did not commit either burglary, but, on cross-examination, he could not recall his

---

² Petitioner was apparently in custody on an unrelated charge. The August 11, 2002 meeting between petitioner and the Nassau Police is discussed in somewhat greater detail in *Brewster v. People of the State of New York*, No. 08-cv-4653 (JFB) (E.D.N.Y. Jan. 6, 2010), an opinion in which this Court denied petitioner's application for a writ of habeas corpus relating to a Nassau County conviction. A saliva sample was also taken from petitioner at this meeting.

3

whereabouts on the dates that the burglaries occurred, nor could he explain how his blood ended up at both crime scenes. (*Id.* 335:7-337:15.)

After hearing the evidence, the jury found the petitioner guilty of both third degree burglary counts on December 2, 2004. He was sentenced as a predicate felony offender to consecutive terms of incarceration from three to six years on the first count and from three and one-half to seven years on the second count.

### 2. Direct Appeal

Petitioner appealed his conviction to the Appellate Division, Second Department. He argued that: (1) given that only circumstantial evidence was introduced against him at trial, the trial court gave the jury an improper instruction; (2) the evidence at trial was insufficient to convict him, and the verdict was against the weight of the evidence; and (3) the imposed sentence was harsh and excessive. In a decision and order dated February 13, 2008, the Second Department affirmed petitioner's conviction. *See People v. Brewster*, 849 N.Y.S.2d 902 (App. Div. 2008). On May 8, 2008, the Court of Appeals denied petitioner leave to appeal. *See People v. Brewster*, 890 N.E.2d 249 (N.Y. 2008) (table opinion).

### 3. The Instant Petition

On October 29, 2008, petitioner filed a *pro se* petition in this court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. Petitioner claims (1) that the trial court improperly instructed the jury when it failed to apply the moral certainty/circumstantial evidence standard; (2) that he was coerced into consenting to give blood and saliva samples because of the "overwhelming presence of law enforcement officials from [Nassau and Suffolk] counties" and because he was being interrogated at the time; (3) the evidence at trial did not establish his guilt beyond a reasonable doubt, and the trial court's verdict was against the "weight of the evidence"; and (4) that petitioner was incapable of giving his consent to the previously mentioned blood and saliva samples because he suffers from schizophrenia and an "anti-social disorder." The Suffolk County District Attorney submitted an opposition on December 31, 2008. Petitioner did not submit a formal reply but did submit a letter in October 2009 asking about the status of his case and a letter on December 21, 2009 citing a recent Supreme Court case. *See infra* note 3. The Court has fully considered all the submissions of the parties.

## II. STANDARD OF REVIEW

To determine whether petitioner is entitled to a writ of habeas corpus, a federal court must apply the standard of review set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which provides, in relevant part:

> d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of,

4

clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2554. "Clearly established Federal law" is comprised of "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.*

AEDPA establishes a deferential standard of review: "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams*, 529 U.S. at 411). The Second Circuit added that, while "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Id.* at 93 (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)). Finally, "if the federal claim was not adjudicated on the merits, 'AEDPA deference is not required, and conclusions of law and mixed findings of fact and conclusions of law are reviewed *de novo*.'" *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009) (quoting *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)).

III. DISCUSSION

A. Procedural Issues

1. Exhaustion

As a threshold matter, a district court shall not review a habeas petition unless "the applicant has exhausted the remedies available in the courts of the state." 28 U.S.C. § 2254(b)(1)(A). Although a state prisoner need not petition for certiorari to the United States Supreme Court to exhaust his claims, *see Lawrence v. Florida*, 549 U.S. 327, 333 (2007), petitioner must fairly present his federal constitutional claims to the highest state court having jurisdiction over them. *See Daye v. Attorney Gen. of N.Y.*, 696 F.2d 186, 191 (2d Cir. 1982) (en banc). Exhaustion of state remedies requires that a petitioner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971) (quotation

marks omitted) (alteration in original)).

### 2. State Procedural Requirements

Like the failure to exhaust a claim, a habeas petitioner's failure to satisfy the state's procedural requirements deprives the state courts of an opportunity to address the federal constitutional or statutory issues in a petitioner's claim. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). Once it is determined that a claim is procedurally barred under state rules, a federal court may still review such a claim on its merits if the petitioner can demonstrate both cause for the default and prejudice resulting therefrom, or if he can demonstrate that the failure to consider the claim will result in a miscarriage of justice. *Coleman*, 501 U.S. at 750 (citations omitted). A miscarriage of justice is demonstrated in extraordinary cases, such as where a constitutional violation results in the conviction of an individual who is actually innocent. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

### 3. Application

In this case, petitioner raised grounds one and three—respectively, his claims regarding the trial court's jury instruction and the sufficiency and weight of the evidence—on direct appeal. Petitioner unsuccessfully raised these claims in his appeal to the Second Department, and the New York Court of Appeals denied petitioner leave to appeal these issues. As such, petitioner has adequately exhausted his state remedies with respect to grounds one and three.

However, ground three, regarding the sufficiency and weight of the evidence, is procedurally barred from habeas review. Petitioner presented this claim on direct appeal in the New York State courts. The Second Department held the issue was "unpreserved for appellate review." *People v. Brewster*, 849 N.Y.S.2d 902, 902 (App. Div. 2008). The court went on to state that, "in any event . . . we find that [the evidence] was legally sufficient to establish [petitioner's] guilt of burglary in the third degree beyond a reasonable doubt." *Id.*

When a state court relies on an independent and adequate state law ground—such as, in this case, failure to preserve the issue for appeal—federal habeas review is foreclosed. *Glenn v. Bartlett*, 98 F.3d 721, 724 (2d Cir. 1996) (finding that failure to preserve issue for appeal was adequate and independent state law ground precluding federal habeas review). This is true even assuming the state court rules in the alternative on the merits of petitioner's claims. *See id.* at 724-25; *see also Green v. Travis*, 414 F.3d 288, 294 (2d Cir. 2005) ("[E]ven when a state court says that a claim is 'not preserved for appellate review' but then rules 'in any event' on the merits, such a claim is procedurally defaulted."). Therefore, petitioner's claim regarding the sufficiency and weight of the evidence is procedurally defaulted.

Additionally, petitioner has not raised grounds two and four—his claims regarding his consent to the taking of DNA samples—in state court. Nonetheless, this Court will deem these claims exhausted because, at this point, petitioner cannot obtain state court review of these claims. *See Van Stuyvesant v. Conway*, No. 03 Civ. 3856 (LAK), 2007 WL 2584775, at *14 (S.D.N.Y. Sept. 7, 2007) ("Where federal habeas claims are unexhausted, but the petitioner no longer has any available avenue to pursue those claims in state court, this

Court will 'deem' the claims exhausted."). Petitioner could have raised these claims—which relate to events occurring before his trial—on direct appeal, but he did not. He cannot now take a second direct appeal nor can he now raise these claims on state collateral review because state collateral review is generally available only for claims that could not have been raised on direct appeal. *See Jimenez v. Walker*, 458 F.3d 130, 149 (2d Cir. 2006) (deeming petitioner's claim that New York state trial was fundamentally unfair exhausted but procedurally defaulted because petitioner had "already taken his one direct appeal, and this claim is procedurally barred from . . . collateral attack . . . ."); *see also* N.Y. Crim. Proc. Law § 440.10(2)(c) (stating that state court must deny a motion to vacate judgment when claims could have been raised on direct appeal); *Aparicio v. Artuz*, 269 F.3d 78, 87 n.1 (2d Cir. 2001) (stating that *coram nobis* petition is available "only in the context of ineffective assistance of appellate counsel" (citing *People v. Bachert*, 509 N.E.2d 318 (N.Y. 1987))); *Van Stuyvesant*, 2007 WL 2584775, at *14 (stating that state writ of habeas corpus is unavailable for claims that could have been raised on direct appeal (citing *People ex rel. Allah v. Leonardo*, 565 N.Y.S.2d 331 (App. Div. 1991))); *Thompson v. Burge*, No. 05-CV-2914 (JFB), 2007 WL 2020185, at *10 (E.D.N.Y. July 6, 2007) (finding claim procedurally barred "because it was not raised by petitioner on appeal in state court, and . . . there is no longer a state court forum available to petitioner in which to raise this claim"). Therefore, petitioner is procedurally barred from bringing grounds two and four in New York State court.

Thus, grounds two, three, and four are procedurally defaulted. Petitioner cannot overcome the default because he has not shown either cause and prejudice or a fundamental miscarriage of justice.

B. Merits

Although grounds two, three, and four are procedurally barred from review, this Court, in an abundance of caution, has analyzed the merits of all of petitioner's habeas claims and concludes, for the reasons discussed below, that all of the claims in the petition are without merit.[3]

---

[3] On December 21, 2009, petitioner submitted a letter to the Court arguing that his conviction "ran afoul" of the Constitution in light of *Melendez-Diaz v. Massachusetts*, 129 S. Ct. 2527 (2009). Petitioner argues that no forensic scientist testified at his trial regarding "the types of mechanism used to authenticate fungible evidence." To the extent petitioner seeks to amend his petition to add this claim, the claim is without merit. In *Melendez-Diaz*, the United States Supreme Court held that a criminal defendant had a Sixth Amendment right to "be confronted with" at trial the analysts who had identified certain evidence as cocaine; "certificates of analysis" from the analysts, who did not appear at trial, were insufficient. *Id.* at 2531. First, any new rule articulated in *Melendez-Diaz* would not apply retroactively. *See, e.g., Louder v. Coleman*, No. 09-1124, 2009 WL 4893193, at *5 (W.D. Pa. Dec. 10, 2009). Moreover, despite petitioner's allegations to the contrary, the record is clear that the government presented live testimony at petitioner's trial from several police officers and forensic scientists who testified regarding the chain of custody of swabs taken from the burglary scenes and from petitioner. Moreover, Ms. Wyss, the scientist who actually performed the DNA analysis that was introduced at petitioner's trial, appeared at trial, testified, and was cross-examined by petitioner's counsel. (*See* Tr. 305:1-325:19.). Thus, petitioner has failed to show a Sixth Amendment violation under *Melendez-Diaz*.

### 1. Ground One-Circumstantial Evidence Jury Instruction

Petitioner argues that he is entitled to habeas relief because the state trial judge gave erroneous jury instructions. Specifically, petitioner cites a portion of the jury instructions in which the trial judge said: "Now turning to the evidence in this case. There are two types of evidence. Namely, direct and circumstantial evidence." (Tr. 368:24-25.) Petitioner argues that this instruction was improper because the only evidence against him was circumstantial evidence. Additionally, petitioner argues that the judge failed to give the "moral certainty" instruction that New York law requires when the prosecution presents only circumstantial evidence against a criminal defendant.

As noted above, petitioner raised this claim on direct appeal. The Second Department held that "the trial court's circumstantial evidence charge adequately conveyed to the jury the principle that it must appear that the inference of guilt was the only one that could fairly and reasonably be drawn, and the evidence had to exclude beyond a reasonable doubt every hypothesis of innocence." *See Brewster*, 849 N.Y.S.2d at 902. Because the state court decided the claim on the merits, the deferential AEDPA standard of review applies.

Jury instructions violate due process if they "fail[ ] to give effect to [the] requirement" that the prosecution must prove every element of a charged offense beyond a reasonable doubt. *See Middleton v. McNeil*, 541 U.S. 433, 437 (2004) (per curiam). However, "a state prisoner making a claim of improper jury instructions faces a substantial burden." *Delvalle v. Armstrong*, 306 F.3d 1197, 1200 (2d Cir. 2002). The petitioner must establish that "'the ailing instruction by itself so infected the entire trial that the resulting conviction violat[ed] due process,' not merely [that] 'the instruction is undesirable, erroneous, or even universally condemned.'" *Id.* at 1201 (quoting *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)); *see also Middleton*, 541 U.S. at 437 (explaining that "not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation").

In this case, the Court finds that the trial court's instructions on circumstantial evidence were not erroneous and certainly did not constitute a due process violation. First, the Court notes that—contrary to petitioner's contentions—the trial court did not imply that there was direct evidence against petitioner. Read in full, the relevant section of the jury instructions reads:

> Now turning to the evidence in this case. There are two types of evidence. Namely direct evidence and circumstantial evidence. *In this case, the People contend that there is circumstantial evidence of the defendant's guilt.*

(Tr. 368:23-369:3.) (emphasis added).

Thus, the trial court explicitly stated that the prosecution was relying on circumstantial evidence. In any event, the rest of the trial court's circumstantial evidence instruction clearly communicated the requirement of proof beyond a reasonable doubt. The court stated that "[a] person's guilt of a charged crime may be proven by circumstantial evidence if that evidence, while not directly establishing guilt, gives rise to an inference of guilt beyond a reasonable doubt." (Tr. 369:16-369:20.) The court further instructed

8

the jury that:

> Any facts upon which an inference of guilt can be drawn must be proven beyond a reasonable doubt. After you have determined what facts, if any, have been proven beyond a reasonable doubt[,] then you must decide what inferences, if any, can be drawn from those facts. Before you may draw an inference of guilt, however, that inference must be the only one that can fairly and reasonably be drawn from the facts, it must be consistent with the proven facts, it must flow naturally, reasonably, logically from them. Again, it must appear that the inference of guilt is the only one that can fairly and reasonably be drawn from the facts, and that the evidence excludes beyond a reasonable doubt every reasonable hypothesis of innocence.
>
> If there is a reasonable hypothesis from the proven facts consistent with the defendant's innocence, then you must find the defendant not guilty.
>
> If the only reasonable inference you find is that the defendant is guilty of a charged crime, and that inference is established beyond a reasonable doubt, then you must find the defendant guilty of that crime.

(Tr. 371:11-372:12.)

In sum, the trial court's jury instructions clearly told the jury that, although it could convict petitioner based on circumstantial evidence, petitioner's guilt needed to be established beyond a reasonable doubt. The trial court's failure to use the phrase "moral certainty" did not lessen the prosecution's burden. In fact, the Supreme Court of the United States has suggested that trial courts *not* use the phrase "moral certainty." *See Victor v. Nebraska*, 511 U.S. 1, 16 (1994) (noting that the Court did "not condone use of the phrase" because "the common meaning of the phrase" has changed over time); *see also Corines v. Warden, Otisville Federal Corr. Inst.*, No. 05-CV-2056 (NGG), 2008 WL 4862732, at *13-15 (E.D.N.Y. June 10, 2008) (rejecting claim in habeas petition regarding failure to include "moral certainty" language in reasonable doubt instruction); *Francesehi v. Walsh*, No. 02-CV-2779 (JG), 2004 WL 1166650, at *9 (E.D.N.Y. May 24, 2004) (rejecting habeas claim regarding failure to include a "moral certainty" instruction in cases involving wholly circumstantial evidence). Therefore, the Court finds that the state courts' resolution of this claim regarding the jury instructions was not contrary to, nor an unreasonable application of, clearly established federal law. *See* 28 U.S.C. § 2254(d).

2. Ground Three-Sufficiency of Evidence

Petitioner claims that the evidence presented at trial did not establish "guilt beyond a reasonable doubt, and the verdict was against the weight of the evidence." (Pet. at 9.) "Weight of evidence" is the name of a specific claim under New York state law and, thus, is not cognizable on federal habeas review. *See Correa v. Duncan*, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001) ("A 'weight of the evidence' argument is a pure state law claim grounded in New York Criminal Procedure Law § 470.15(5), whereas a legal sufficiency claim is based on federal due process principles."); *see also Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law.").

9

However, the Court will construe the *pro se* petition as asserting this ground as a sufficiency of evidence claim under the Fourteenth Amendment's Due Process Clause. *See Einaugler v. Supreme Court of the State of New York*, 109 F.3d 836, 839 (2d Cir. 1997) (stating that due process prohibits "conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [the defendant] is charged.'" (quoting *In re Winship*, 397 U.S. 358, 364 (1970))). The law governing habeas relief from a state conviction based on insufficiency of evidence is well established. A petitioner "bears a very heavy burden" when challenging the legal sufficiency of the evidence in a state criminal conviction. *Einaugler*, 109 F.3d at 840. As such, a "state criminal conviction will be upheld if, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vassell v. McGinnis*, No. 04 Civ. 0856 (JG), 2004 WL 3088666, at *5 (E.D.N.Y. Dec. 22, 2004) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *see also Flowers v. Fisher*, No. 06-5542-pr, 2008 U.S. App. LEXIS 22569, at *3 (2d Cir. Oct. 21, 2008) (habeas petitioner cannot prevail on a claim of legally insufficient evidence unless he can show that viewing the evidence in the light most favorable to the prosecution, "no rational trier of fact could have found proof of guilt beyond a reasonable doubt" (quoting *Jackson*, 433 U.S. at 324)); *Policano v. Herbert*, 507 F.3d 111, 115-16 (2d Cir. 2007) ("'[I]n a challenge to a state criminal conviction brought under 28 U.S.C. § 2254 . . . the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt.'" (quoting *Jackson*, 443 U.S. at 324)) (alteration in original); *Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002) ("[W]e review the evidence in the light most favorable to the State and the applicant is entitled to habeas corpus relief only if no rational trier of fact could find proof of guilt beyond a reasonable doubt based on the evidence adduced at trial."). Even when "faced with a record of historical facts that supports conflicting inferences, [this Court] must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Wheel v. Robinson*, 34 F.3d 60, 66 (2d Cir. 1994). Thus, "[a] habeas court will not grant relief on a sufficiency claim unless the record is 'so totally devoid of evidentiary support that a due process issue is raised.'" *Sanford v. Burge*, 334 F. Supp. 2d 289, 303 (E.D.N.Y. 2004) (quoting *Bossett v. Walker*, 41 F.3d 825, 830 (2d Cir. 1994)). When considering the sufficiency of the evidence of a state conviction, "[a] federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999).

In this case, petitioner was convicted of two counts of third degree burglary. Under the New York Penal Law, "a person is guilty of burglary in the third degree when he knowingly enters or remains unlawfully in a building with intent to commit a crime therein." N.Y. Penal Law § 140.20. Here, there was more than sufficient evidentiary support for both of petitioner's convictions. With respect to the Kinemotive Corporation burglary, the jury could reasonably infer, based on the testimony of Kenneth Moll, that a person entered the building and stole three computers and a computer monitor. Based on DNA evidence recovered from the scene and analyzed at the Suffolk County Crime Lab, the jury also could reasonably infer that petitioner

10

was the person who stole the equipment. Similarly, with respect to the Marchon Eyewear burglary, a jury could reasonably infer, based on the testimony of two Marchon employees, that a person entered Marchon's offices and stole a laptop computer. Again, the jury could reasonably conclude, based on DNA evidence, that petitioner was the person who stole the equipment. In short, petitioner's guilt was established by overwhelming evidence at trial. Thus, even assuming *arguendo* that petitioner's sufficiency of evidence claim was not procedurally defaulted, a rational trier of fact could easily have found that the prosecution established beyond a reasonable doubt the elements necessary to petitioner's convictions. Accordingly, petitioner's sufficiency claim has no merit.

3. Grounds Two and Four-Consent to Blood and Saliva Swabs

In both ground two and ground four, petitioner challenges the validity of his consent to blood and saliva sample testing. In ground two, petitioner claims that he was coerced into providing blood and saliva samples. Specifically, he claims that the "overwhelming presence of law enforcement officials from [Nassau and Suffolk] counties interrogating him for an unspecified period of time was certainly coercieve." (Pet. at 7.) In ground four, petitioner asserts that schizophrenia and an "anti-social disorder" also prevented him from validly consenting to the blood and saliva samples.

The Court construes both grounds two and four as asserting a claim under the Fourth Amendment of the United States Constitution. *See generally Schneckloth v. Bustamonte*, 412 U.S. 218 (1973); *Nicholas v. Goord*, 430 F.3d 652, 658 (2d Cir. 2005) (finding "that the extraction and analysis of plaintiffs' blood for DNA-indexing purposes constituted a search implicating the Fourth Amendment"); *Mack v. United States*, 814 F.2d 120, 124-25 (2d Cir. 1987) (rejecting argument that Fourth Amendment was violated where defendant consented to the taking of urine sample). As a preliminary matter, petitioner does not describe where or when he was forced to give blood or saliva samples. However, the Court's independent review of the record in this case reveals that Nassau County Police took blood samples from petitioner on August 11, 2002 and submitted the sample to the Nassau County Medical Examiner's Office for DNA analysis, after which a DNA profile for that blood sample was obtained.[4] (Tr. 282:6-15.)[5] Additionally, Suffolk County

---

[4] This evidence regarding the blood sample is consistent with the evidence in the record in the habeas petition relating to the petitioner's Nassau County conviction, in which the Fourth Amendment claim regarding the taking of the blood and saliva samples was rejected. *See Brewster v. People of the State of New York*, No. 08-cv-4653 (JFB) (E.D.N.Y. Jan. 6, 2010) (denying petition).

[5] Respondents contend that because the blood and saliva samples "arise from the actions of the Nassau County Police Department . . ., they are meritless claims with regard to this case." (Resp. Mem. of Law at 4.) While the blood and saliva samples were not introduced at petitioner's Suffolk County trial, there was evidence at the trial that the DNA profile from petitioner's blood was entered into the DNA database and provided the initial link between petitioner and the two burglaries. (Tr. 282:6-15; 293:17-294:16.) Thus, the petitioner's blood sample from the Nassau County case was referenced at the Suffolk trial. Because the sample was referenced, the Court will analyze the merits of this claim (even though petitioner's claims regarding his consent to the blood and saliva samples are procedurally defaulted, as noted *supra*). For the reasons

11

Investigator Harrington took a "buccal swab"— a sample of tissue from the inside of a person's cheek—from petitioner on December 3, 2003. (Tr. 302:16-302:18; 303:15-303:21.) It was this buccal swab sample that was sent to the Suffolk County Crime Lab, analyzed with the data from the scene of the burglaries, and then introduced into evidence while Investigator Harrington was testifying at petitioner's trial. (Tr. 303:22-304:9; 312:22-313:12.) As set forth below, petitioner's claims regarding the blood and saliva samples have no merit.

As a threshold matter, Fourth Amendment claims are generally not cognizable on federal habeas review. The Supreme Court has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494 (1976); *see also Wallace v. Kato*, 549 U.S. 384, 395 n.5 (2007) ("Under *Stone*, Fourth Amendment violations are generally not cognizable on federal habeas, but they are cognizable when the State has failed to provide the habeas petitioner 'an opportunity for full and fair litigation of a Fourth Amendment claim'" (quoting *Stone*, 428 U.S. at 482)). In the Second Circuit, a federal habeas court may only review a petitioner's Fourth Amendment violation claim if "'(a) the state has provided no corrective procedures at all to redress the alleged Fourth Amendment violations or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process.'" *Mejias v. Allard*, No. 03 Civ. 5195 (NGG) (LB), 2006 WL 119033, at *20 (E.D.N.Y. Jan. 13, 2006) (quoting *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992)). Because New York State provides a facially adequate statutory mechanism for review of Fourth Amendment claims, petitioner must show that an "unconscionable breakdown" occurred. *See Capellan*, 975 F.2d at 70 n.1; *Steinbergin v. Barkley*, No. 05 Civ. 6565 (JSR) (MHD), 2007 WL 1987953, at *4 (S.D.N.Y. Apr. 18, 2007); *see also Garrett v. Smith*, No 05-CV-3374 (JFB), 2006 WL 2265094, at *8 (E.D.N.Y. Aug. 8, 2006).

The voluntariness of the blood and saliva samples or, for that matter, the buccal swab, was not actually litigated in the Suffolk County trial court. However, it is clear that no "unconscionable breakdown" took place. In *Capellan*, the Second Circuit gave a few examples of "the sort of disruption or obstruction of a state proceeding typifying an unconscionable breakdown." 975 F.2d at 70 (internal quotation marks omitted). The court suggested an unconscionable breakdown might occur if, for example, the trial court "yield[ed] to mob intimidation of the jury" or if "the process furnished was 'claimed to be meaningless [because] the totality of state procedures allegedly did not provide rational conditions for inquiry into federal-law . . . questions.'" *Id.* (quoting Paul M. Bator, *Finality in Criminal Law and Federal Habeas Corpus Review for State Prisoners*, 76 Harv. L. Rev. 441, 456-57 (1963)). Clearly, nothing of the sort occurred in petitioner's trial. Therefore, petitioner cannot obtain habeas relief on these claims because, in addition to his procedural default discussed *supra*, he had a full and fair opportunity to litigate these claims in the New York state court.

---

discussed *infra*, such claims regarding the blood and saliva sample lack merit.

Even if petitioner could assert these claims, the Court finds them to be without merit. First, there is absolutely no evidence in the record that the blood and saliva samples taken by the Nassau County Police on August 11, 2002 violated the Fourth Amendment.[6] Second, although there was brief background testimony regarding the DNA from the blood sample at the Suffolk County trial that is the subject of the instant petition (and the subsequent match in the database), an independent DNA analysis was performed comparing the DNA profile from the buccal swab taken from petitioner in December 2003 (not the blood or saliva samples from 2002) and the DNA profile from the blood recovered at the scene of the two burglaries. Thus, it was the DNA profile from the buccal swab in December 2003, and not the blood or saliva samples from August 2002, that provided the basis for the expert testimony in this trial linking petitioner to the two burglaries. However, petitioner does not challenge the taking of the buccal swab in December 2003 on Fourth Amendment grounds. Even construing petitioner's allegations regarding "blood and saliva samples" to assert a challenge to the later buccal swab taken by Investigator Harrington, petitioner has pointed to no evidence that the taking of the buccal swab was without his consent or otherwise violated his rights. The fact that petitioner was in custody at the time his consent was given is not enough to preclude a finding of voluntariness. *See United States v. Ansaldi*, 372 F.3d 118, 129 (2d Cir. 2004) ("The fact that police drew their guns to effectuate the arrest does not necessarily establish coercion, neither does the fact that [the defendant] was handcuffed."); *accord United States v. Puglisi*, 790 F.2d 240, 243 (2d Cir. 1986). In sum, petitioner has put forth no evidence that the blood or saliva samples taken from him in August 2002, or the buccal swab sample taken in December 2003, violated his constitutional rights in any way. Accordingly, there is no basis for habeas relief on either ground two or ground four because such claims have no merit.

In sum, having carefully analyzed all of petitioner's claims, the Court concludes that the state court decisions on the issues raised by petitioner were not contrary to, nor an unreasonable application of, clearly established federal law, and all of the claims lack merit and do not provide any ground for habeas relief. Accordingly, the habeas petition must be denied.

## IV. CONCLUSION

For the foregoing reasons, petitioner has demonstrated no basis for relief under 28 U.S.C. § 2254. Accordingly, the instant habeas petition is denied. Because petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2). The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: January 21, 2010
Central Islip, New York

---

[6] The Court notes that this Fourth Amendment claim was raised in petitioner's habeas petition regarding the Nassau County conviction, which the Court rejected in its January 6, 2010 Memorandum and Order.

\* \* \*

Petitioner is *pro se*. Attorney for respondent is Thomas J. Spota, Suffolk County District Attorney, 200 Center Drive, Riverhead, NY 11901, by Guy Arcidiacono and Karla Lato.